**WO**                                                                                               JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Charles Johnson, | No. CV 08-1097-PHX-MHM (GEE) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Edward Charles Johnson brought this civil rights action under 42 U.S.C. § 1983 against Ball, a Correctional Officer (CO) IV with the Arizona Department of Corrections (ADC) (Doc. #1).[1] Defendant filed a Motion to Dismiss for failure to exhaust administrative remedies and, alternatively, for failure to state a claim (Doc. #22). Plaintiff failed to respond.

The Court will grant Defendant's motion.

**I.    Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex-Lewis Barchey Unit (Doc. #1 at 1). Plaintiff alleged that in response to his grievances, Defendant attempted to endanger Plaintiff's personal safety by forcing Plaintiff to enter ADC protective custody (id. at 4). Plaintiff claimed that Defendant knew that Plaintiff's safety would be in danger in protective custody, yet displayed malice in forcing the protective

---

[1] Upon screening, the Court dismissed 21 other named Defendants (Doc. #5).

custody assignment. He further claimed that another officer—CO III Martyn—placed Plaintiff in danger after he filed a grievance and Defendant failed to take action in response to Martyn's actions (id.).²

The Court screened Plaintiff's Complaint and ordered service on Defendant (Doc. #5). Defendant filed an Answer (Doc. #9), and the Court issued a Scheduling Order (Doc. #10). Then, on March 4, 2009, Defendant filed her Motion to Dismiss for failure to exhaust administrative remedies and, alternatively, for failure to state a claim (Doc. #22).

## II. Motion to Dismiss

### A. Defendant's Contentions

In her motion, Defendant contends that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, Defendant submits the affidavit of CO III Golder, the Barchey Unit Grievance Coordinator (id., Ex. A, Golder Aff. ¶¶ 1-2). Golder explained that the ADC inmate grievance system is governed by Department Order (DO) 802—Inmate Grievance System (id. ¶ 5; Attach. 1). Golder attested that a copy of DO 802 is available to inmates in each prison unit's library (id. ¶ 7). Golder stated that under DO 802, inmates may grieve issues related to among other things, staff, visitation, mail, institutional procedures, medical care, and conditions of confinement (id. ¶ 6).

Golder described the steps in a staff grievance: (1) within 10 days of a specific problem, an inmate submits an inmate letter to his assigned CO III to attempt to informally resolve the complaint; (2) if the inmate is not satisfied with the CO III's response, he may file a formal grievance to the Grievance Coordinator, in which he must describe his attempt at informal resolution; (3) the Grievance Coordinator logs the staff grievance and then forwards it to the Warden, Deputy Warden, or Administrator for review and response; (4) if the inmate is not satisfied with the response, he may submit a grievance appeal to the ADC Director, whose response is final (id. ¶ 8).

Golder attested that the Grievance Coordinator maintains a record of all processed and

---

²The Court dismissed Counts I, III, and IV for failure to state a claim (Doc. #5).

- 2 -

unprocessed inmate grievances (id. ¶ 10). According to Golder, a review of the Barchey Unit grievance records reflects that since his confinement began in February 2008, Plaintiff filed three inmates letters: (1) one dated March 28, 2008, which complained about the conduct of CO III Martyn (id. ¶ 14); (2) one dated April 7, 2008, which addressed three separate issues in violation of DO 802's policy limiting each inmate letter to one issue (id. ¶ 16); and (3) one dated April 30, 2008, which claimed that Golder violated Plaintiff's civil rights in his capacity as a Grievance Coordinator (id. ¶ 17).

Golder stated that Plaintiff filed just one inmate grievance on April 23, 2008 (id. ¶ 18). This inmate grievance claimed that Defendant failed to take action in response to the abuse of authority, unprofessionalism, and threat to personal safety that arose from CO III Martyn's conduct (id. ¶ 12). Golder explained that in this grievance, Plaintiff failed to provide any documentation of his attempts at informal resolution, i.e. a copy of his inmate letter (id.). Golder stated that because Plaintiff failed to complete the first step and provide a copy of his inmate letter and because more than 10 days had passed since the date of the subject incident, he returned Plaintiff's grievance as "unprocessed" on April 25 (id.).

Defendant argues that because Plaintiff failed to follow the procedural rules with respect to the single grievance concerning Defendant—the April 23, 2008 grievance—Plaintiff did not properly exhaust his available administrative remedies and his claim should be dismissed (Doc. #22 at 6). Defendant further argues that even if Plaintiff's March 28, 2008 inmate letter was construed as a complaint against Ball, Plaintiff's April 23 inmate grievance on the subject was untimely. Under DO 802, the CO III had 10 work days—until April 11—to respond to the inmate letter and Plaintiff then had 10 calendar days—until April 21—to file his inmate grievance (id. at 7). Defendant concludes that the April 23 inmate grievance was therefore untimely and constitutes a failure to properly exhaust (id.).

As to Plaintiff's other two inmate letters, Defendant contends that they did not comply with the DO 802 requirement that all inmate letters begin with the statement, "I am attempting to informally resolve the following problem" (id. at 8).

Defendant also contends that Plaintiff failed to file any appeals to the ADC Director with respect to any complaint against Defendant (id.). Defendant proffers the affidavit of Aurora Aguilar, an ADC Hearing Officer assigned to the Central Office in Phoenix (id., Ex. B, Aguilar Aff. ¶ 1). Aguilar attested that upon review of the Grievance Appeal Log for the period of Plaintiff's confinement, she found that there were no grievance appeals to the ADC Director from Plaintiff concerning Defendant's conduct (id. ¶ 3).

Defendant proffers a copy of DO 802 (id., Ex. A), and copies of Plaintiff's inmate letters and grievances (id., Attachs. 2-7).

In the alternative to nonexhaustion, Defendant argues that Plaintiff failed to state a constitutional claim because he failed to allege that Defendant actually harmed him and he failed to allege that he was physically injured (Doc. #22 at 8-9). Defendant notes that there may be claims of injury in the Complaint outside of Count II or they may not be clear due to Plaintiff's poor handwriting, in which case, Defendant moves the Court for a more definite statement under Rule 12(e) (id. at 9). Otherwise, Defendant seeks dismissal for failure to state a claim (id.).

### B.     Plaintiff's Response

The Court informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendant's contentions (Doc. #24).[3] Plaintiff did not file a response.

Upon review of Defendant's motion, the Court noted that Defendant's certificate of service reflected that the motion was addressed to Plaintiff at the Barchey Unit; however, the address included the incorrect prisoner number (see Doc. #22 at 10). Further, Plaintiff had since been released from ADC custody. The Court therefore directed Defendant to resend a copy of the motion to Plaintiff's current address and provided an additional 30 days for Plaintiff to respond (Doc. #28).

Defendant filed his Notice that he resent a copy of the motion (Doc. #29). Plaintiff still did not file a response. The time for responding has expired, and the motion is ready for

---

[3]Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

ruling.

## III. Exhaustion

### A. Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B. Analysis

As stated, Defendant bears the burden of proving lack of exhaustion and therefore must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Defendant submits evidence that a grievance system was available at the jail for Plaintiff's claims (Doc. #22, Ex. A, Golder Aff. ¶¶ 6-7; Attach. 1). Defendant also proffers copies of Plaintiff's inmate letters and an inmate grievance, which demonstrate that Plaintiff was aware of the ADC grievance procedures (id., Attachs. 2-7).

In his Complaint, Plaintiff indicated that administrative remedies were available, that he submitted a request for relief on this claim, and that he appealed it to the highest level (Doc. #1 at 4). Plaintiff attached to his Complaint a copy of an inmate letter form dated April

20, 2008, and addressed to the Director; this form includes an ADC stamp indicating that it was "received" in the Director's Office (id., Attach.). Plaintiff wrote on the form that this was an appeal to the Director pursuant to DO 802, and he complained about the due process violations connected to his parole status hearing (id.). There are no other grievance forms attached to the Complaint.

Assuming that the form submitted by Plaintiff constitutes an appeal to the Director, it concerns an issue unrelated to the claim against Defendant and, therefore, does not demonstrate exhaustion.

The grievance documents submitted by Defendant also support a finding that Plaintiff failed to exhaust his claim against Defendant. Although Defendant's presentation of these documents is confusing, on their faces, the documents illustrate the following:

(1) Plaintiff submitted a March 28, 2008 inmate letter complaining about Martyn's conduct and that it endangered Plaintiff (Doc. #22, Ex. A, Attach. 4).

Plaintiff followed this inmate letter with a inmate grievance on April 23, 2008, in which he stated that after the incident with Martyn, Defendant was called and informed of the situation (id., Attach. 2). Plaintiff further stated that Defendant advised Plaintiff to submit an inmate letter, which Plaintiff did on March 28, 2008, but Defendant failed to comply with DO 802.08, which requires the CO III to investigate the complaint and respond to the inmate (id.).

(2) Plaintiff submitted an April 7, 2008 inmate letter complaining about the lack of a response to his Director's Appeal concerning due process violations at his parole hearing (id., Attach. 5). In this inmate letter, Plaintiff also requests a Notice of Claim form (id.).

(3) Plaintiff submitted an April 20, 2008 inmate letter complaining about Martyn's and Defendant's conduct and claiming that Defendant attempted to threaten, harass, and intimidate Plaintiff (id., Attach. 7).

As to the first inmate letter and subsequent inmate grievance, assuming that these documents satisfy the first two steps in the grievance process (even though Plaintiff failed to mention Defendant in the inmate letter), the inmate grievance failed to attach a copy of the

inmate letter as required under DO 802, and there is no record that Plaintiff appealed the inmate grievance response (Doc. #22, Ex. A, Attach. 3). Further, as argued by Defendant, after the 10 work days expired for the CO III to respond to the inmate letter, Plaintiff had just 10 calendar days to file his inmate grievance (id., Attach. 1 (DO. 802.08 § 1.3.2 & 802.09 § 1.1.2)). His inmate grievance was filed 12 calendar days after the response date expired; thus, it was untimely.

With regard to the April 7 inmate letter, it has no connection to the claim against Defendant.

Finally, the April 20 inmate letter referred to Defendant and the claim raised in this action; however, there is no record that Plaintiff proceeded past the first step of the grievance process, and Defendant submits evidence that no appeal to the Director was filed (Doc. #22, Ex. B, Aguilar Aff. ¶ 3).

In failing to respond to Defendant's motion, Plaintiff did not refute the evidence showing that he failed to exhaust the available administrative remedies for his claim against Defendant. Defendant's motion will therefore be granted, and the Court need not address Defendant's failure-to-state-a-claim argument.

## IV. Failure to Respond

Alternately, the Court has the discretion under Local Rule of Civil Procedure 7.2(i) to deem Plaintiff's lack of response as a consent to the granting of Defendant's Motion to Dismiss. Plaintiff was warned of this possibility (Doc. #24 at 2). The Ninth Circuit has upheld a dismissal based on a failure to comply with a similar local rule in the District of Nevada. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995). Before dismissal on this basis, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. at 53 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

The first factor "always favors dismissal." Yourish v. Cal. Amplifier, 191 F.3d 983,

990 (9th Cir. 1999). The second factor usually favors dismissal, and this case is no exception. See Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). There is no risk of prejudice to Defendant to resolve the motion in his favor, and judicial efficiency also favors resolution of this action. Public policy favors disposition of cases on their merits, so the fourth factor weighs against dismissal. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). For the fifth factor, dismissal without prejudice is the least drastic sanction.

In sum, the five-factor analysis weighs in favor of dismissal. The Court will therefore deem Plaintiff's failure to respond as a consent to the granting of the motion.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to Dismiss (Doc. #22).

(2) Defendant's Motion to Dismiss (Doc. #22) is **granted**; Plaintiff's action is dismissed without prejudice for failure to exhaust or, alternately, for failure to respond.

(3) The Clerk of Court must enter judgment of dismissal accordingly.

DATED this 16th day of December, 2009.

_____
Mary H. Murguia
United States District Judge